UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>CUATHEMOC SOLIS,<br><br>          Defendant. | Case No.: 18-cr-2494-GPC<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 594.]** |

Defendant Cuathemoc Solis has filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 594. The Government opposes. ECF No. 600 ("Opp."). For the reasons that follow, Solis's motion is GRANTED.

**I. BACKGROUND**

Solis was convicted by guilty plea of one count of Conspiracy to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(A)(1) and 846. ECF Nos. 235, 459. Solis was sentenced to a term of imprisonment of 19 months, followed by 4 years of supervised release. ECF No. 459. Solis was serving his sentence at the Federal Correctional Institution Lompoc until August 5, 2020, when he was transferred to Ocean View Residential Reentry Center ("RRC"), operated by CoreCivic. ECF No. 594 at 5. Solis has served about 13 months, or almost 70 percent of his sentence.

Solis is 41 years old and is obese. *Id.* at 10; ECF No. 265 ("Presentence Investigation Report" or "PSR") at 3. He has asthma that must be managed with an inhaler, as well as a history of deep vein thrombosis and pulmonary embolism. ECF No. 594 at 4. Solis previously suffered a blood clot in his calf that affected his lungs and led to his hospitalization. PSR at 12. Solis experienced COVID-19 symptoms while at FCI Lompoc, including throbbing pain in his lung, but was not tested. ECF No. 594 at 6.

## II.   DISCUSSION

Solis now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Solis has satisfied the administrative exhaustion requirement, and second, whether Solis has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.     Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. On May 24, 2020, while incarcerated at FCI Lompoc, Solis made a request to the Warden for home confinement. ECF No. 601-1. On May 26, 2020, Solis received a

1 response that indicated he qualified for home confinement and to "be patient" while the
2 prison completed his paperwork. *Id.* Following further correspondence with FCI
3 Lompoc staff, Solis's halfway house release date was moved up from November 30,
4 2020 to August 5, 2020, but his request for home confinement due to COVID-19 appears
5 to have neither been granted nor denied. *Id.* He has not made a request from release to
6 the Ocean View RCC. ECF No. 584 at 8. Solis argues that he exhausted his
7 administrative remedies because he submitted a request for home confinement from the
8 FCI Lompoc Warden, and that he did not have any administrative remedies reasonably
9 available to him at the Ocean View RRC. *Id.*; ECF No. 601 at 7. The Government
10 argues that Solis failed to exhaust his administrative remedies because he did not submit
11 a request to the RRC coordinator for BOP's Residential Reentry Management Long
12 Beach field office or the director of the Ocean View RRC, and no exception to the
13 exhaustion requirement exists. Opp. at 10–11.

"Even where exhaustion is seemingly mandated by statute . . . the requirement is
not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). There are
generally three bases for waiver of an exhaustion requirement. *See United States v.
Perez*, ___ F.Supp.3d ___, No. 17-CR-513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1,
2020) (discussing exceptions to statutory exhaustion in context of motion for
compassionate release during COVID-19 pandemic). "First, exhaustion may be
unnecessary where it would be futile, either because agency decisionmakers are biased or
because the agency has already determined the issue." *Washington*, 925 F.3d at 118.
"[U]ndue delay, if it in fact results in catastrophic health consequences, could make
exhaustion futile." *Id.* at 120. Second, "exhaustion may be unnecessary where the
administrative process would be incapable of granting adequate relief," including
situations where "the relief the agency might provide could, because of undue delay,
become inadequate." *Id.* at 119-20. Third, "exhaustion may be unnecessary where
pursuing agency review would subject plaintiffs to undue prejudice." *Id.* at 119

4

Solis filed a request with the Warden of FCI Lompoc seeking placement in home confinement due to his vulnerabilities to COVID-19. Although Solis did not specifically request compassionate release, he did list "the extraordinary or compelling circumstances [he] believes warrant consideration"—his medical conditions—as well as his "proposed release plans," as required in a request under 28 C.F.R. § 571.61. *See United States v. Matecki*, No. 2:15-CR-00177-TLN, 2020 WL 2512406, at *2 (E.D. Cal. May 15, 2020) (finding defendant's request for home confinement sufficient to be construed as a request for compassionate release given COVID-19). The fact that Solis was transferred to a different facility after submitting his request to the Warden of FCI Lompoc does not require Solis to start the administrative remedy process anew. *See United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255, at *6 (W.D. Pa. Aug. 20, 2020) (finding defendant exhausted administrative remedies by requesting compassionate release at transferee facility, even though he did not submit another request at transferor facility). Further, in light of the urgency of Solis's request and the potential for serious health consequences given his underlying conditions, the exceptions to the exhaustion requirement counsel in favor of considering the merits of his request. Requiring Solis to submit a new request to the RRC coordinator or director, even after diligently pursuing his previous request at FCI Lompoc, would subject him to undue prejudice—the heightened risk of severe illness—while attempting to exhaust his appeals. *See United States v. Haney*, ___ F.Supp.3d ___, No. 19-CR-541 (JSR), 2020 WL 1821988, at *4 (S.D.N.Y. Apr. 13, 2020) (courts have discretion to waive the exhaustion requirement where doing so would serve Congressional objectives given circumstances now faced by prisoners as a result of the COVID-19 pandemic).

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of

the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

    Solis argues that his obesity, asthma, and history of deep vein thrombosis and pulmonary embolism affecting his lungs serve as extraordinary and compelling reasons justifying his release given the COVID-19 pandemic. ECF No. 594 at 10–11. The Government concedes that Solis's health conditions constitute extraordinary and compelling circumstances given that they are risk factors for severe illness as a result of COVID-19. Opp. at 9.

    The Court finds that the heightened risks that Solis faces based on his medical conditions if he were to contract COVID-19 weigh heavily in favor of his release. Obesity is a factor identified by the Centers for Disease Control and Prevention ("CDC") that heightens the risk of severe injury for those who contract COVID-19, while those suffering from moderate-to-severe asthma "might be at an increased risk for severe

illness." *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Further, although a history deep vein thrombosis and pulmonary embolism do not appear on the list of CDC risk factors, the Court recognizes that this history of illness affecting his lungs, when combined with his other conditions, poses concerns should he contract COVID-19.[1] Therefore, as the Government agrees, Solis's health conditions present extraordinary and compelling reasons under Section 3582.

Any incarcerated person with one of the underlying conditions identified by the CDC is unlikely to be able "to provide self-care within the environment of a correctional facility" to avoid contracting COVID-19. U.S. Sentencing Guidelines § 1B1.13 cmt. 1(A)(ii). This is especially true for defendants like Solis who are at high risk of contracting severe cases of COVID-19. *See United States v. Ramos*, ___ F.Supp.3d ___, No. 18-CR-30009-FDS, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this institutional setting."). The Government notes that the Ocean View RRC has no reported cases as of September 17, 2020 and has rigorous measures in place to contain the virus. Opp. at 5–6. However, as congregate facilities with frequent turnover, halfway houses may pose similar risks of COVID-19 infection as prisons and jails. *See, e.g.*, *United States v. Gonzalez-Quiroz*, No. 18-CR-4517 (DMS), 2020 WL 3868751, at *1 (S.D. Cal. July 9, 2020). And, as experience has shown, an environment with no reported cases can erupt into a "super-spreader" situation almost overnight. Solis has thus effectively

---

[1] It is unclear from the parties' briefing whether Solis was ever confirmed to have contracted COVID-19 while at FCI Lompoc. However, the Government does not dispute that Solis's possible prior COVID-19 infection," combined with his other health conditions, constitute an extraordinary and compelling reason under Section 3582. Opp. at 9.

7

demonstrated a nexus between his medical conditions and the ongoing pandemic which supports a reduction under Section 3582.

The factors outlined in section 3553 and 3582 also require consideration of public safety.  18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii).  The offense Solis committed resulted in the distribution of cocaine in the community, and the Court recognizes the damage Solis's actions inflicted on members of the public.  Although the severity of the offense weighs against Solis's release, he has served 13 months, or almost 70 percent, of his 19 month sentence.  This was also Solis's first offense. PSR at 10-11.  Solis would return to live with his wife and children if released.  Ultimately, the Court finds that despite the seriousness of Solis's offense, releasing Solis after having served over a majority of his sentence would sufficiently mitigate the potential danger to the public and provide just punishment for the offense.  *Cf. United States v. Tran*, No. CR 08-00197-DOC, 2020 WL 1820520, at *1, *3 (C.D. Cal. Apr. 10, 2020) (granting release where defendant had only 14 months remaining on his 15-year sentence); *United States v. Rodriguez*, ___ F.Supp.3d___, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1, 10 (E.D. Pa. Apr. 1, 2020) (granting release where defendant had served 17 years of his 20-year sentence).

Ultimately, it is clear that Solis's medical condition puts him at significant risk of severe illness should he contract COVID-19.  The Court will reduce the sentence to time served and modify the conditions of supervised release to provide for home incarceration at the residence of Solis's wife and children.  *See United States v. Ben-Yhwh*, ___ F.Supp.3d ___, No. CR 15-00830 LEK, 2020 WL 1874125, at *1 (D. Haw. Apr. 13, 2020) (reducing sentence to time served and mandating home confinement on supervisory release); *United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at *5 (W.D. Ark. Mar. 24, 2020) (reducing sentence to time served and requiring defendant to live at specific care center on supervised release for 5 years); *United States v. Flores*, No. 19-CR-6163L, 2020 WL 3041640 (W.D.N.Y. June 8, 2020) (reducing

8

sentence to time served and ordering 18 months of home confinement); *United States v. Ramos*, No. 18-CR-30009-FDS, 2020 WL 1478307, at *2 (D. Mass. Mar. 26, 2020) (granting release and ordering home detention).

### III. FINDINGS

In light of the heightened medical risk the COVID-19 pandemic poses to Solis in particular, there are extraordinary and compelling reasons to order his immediate release from the Ocean View RRC. "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation." *United States v. Hernandez*, No. 18-cr-00834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020). "It presents a clear and present danger to free society for reasons that need no elaboration." *Id.* The CDC has warned that COVID-19 poses a heightened risk to those incarcerated in correctional facilities. *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf. Solis's continued incarceration over the coming weeks would impose upon him—in addition to other inmates and staff—additional and unnecessary health risks that can be minimized by his early release.

### IV. CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **GRANTED**, to be effective at the close of business today. Solis's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately, to be followed by a 48-month term of supervised release under conditions set forth in the original judgment, plus the following added special condition: (1) Solis shall be placed in home confinement for a period of 4 months without electronic monitoring where he will be restricted to his residence at all times except for medical necessities and court appearances or other activities specifically pre-approved by the Court.

It is **FURTHER ORDERED** that Solis shall remain in self-quarantine for a period of time not less than 14 days after his release.

Solis is **HEREBY ORDERED** to report by telephone to the U.S. Probation Office in San Diego, California within 24 hours of his release from BOP custody.

The Government shall serve copies of this order on the RRC coordinator for BOP's Residential Reentry Management Long Beach field office and the director of the Ocean View RRC immediately. The coordinator and/or director shall immediately release Defendant Cuathemoc Solis from custody. In the event that any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated: October 6, 2020

Hon. Gonzalo P. Curiel
United States District Judge